UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSA MARIA PENA GARCIA,

Petitioner/Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM, in her official capacity as head of that department, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, TODD LYONS, in his official capacity as head of that agency, and ROBERT LYNCH, in his official capacity as director of the Detroit Field Office,

Respondents/Defendants.

Case no.: 25-cv-12023

Hon.

## BRIEF IN SUPPORT OF:

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR MANDAMUS AND HABEAS CORPUS

Petitioner/Plaintiff, Rosa Maria PENA GARCIA (hereinafter referred to simply as "Plaintiff"), by and through attorneys at AYAD LAW, PLLC, respectfully states as follows:

### FACTUAL BACKGROUND

Plaintiff incorporates the factual background laid out in her complaint, by reference, as if fully restated herein.

1 | Page

For the sake of judicial efficiency, and to not confuse and bloat the record in this case, references to exhibits in this brief refer to the exhibits attached to Plaintiff's complaint.

## LAW AND ARGUMENT

**I.     The Court should enjoin Defendants from "removing" Plaintiff while her order of voluntary departure remains valid.**

There are four factors which courts must consider when issuing injunctive relief. The Sixth Circuit describes them as:

> (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction.

*Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

**(1) Whether the movant has shown a strong likelihood of success on the merits.**

Here, the first factor easily weighs in Plaintiff's favor, because her BIA order explicitly states:

> Pursuant to the Immigration Judge's order and conditioned upon compliance with conditions set forth by the Immigration Judge and the statute, the respondent is permitted to voluntarily depart the United States, without expense to the Government, within 60 days from the date of this order or **any extension beyond that time as may be granted by DHS**.
>
> **Exhibit B, March 27, 2023 BIA Order of Voluntary Departure (emphasis added).**

The BIA's final order, which Plaintiff is subject to, explicitly says that Plaintiff is "permitted to voluntarily depart" until the expiration of "any extension… granted by DHS." *Id*. Here, DHS did not challenge the BIA's final order or its wording, which is not subject to any interpretation but Plaintiffs. Defendants also granted Plaintiff extensions when they wrote on her orders of supervision check-in dates which did not include notes such as "must have left US by this time."

**Exhibit D, July 26, 2023 Order of Supervision, page 2**.

As can be plainly seen, on September 12, 2024, Defendants, by and through their ICE officer, wrote on Plaintiff's Suspension Order that she was to return for a simple check-in on September 12, 2025, over two months from the date of this complaint and petition.

**Exhibit H, May 20, 2025 Order of Supervision, page 2**.

Yet on May 20, 2025, for no reason prompted by Plaintiff, Defendants called Plaintiff into their office and told her that she must leave, immediately, and that her record would reflect a "removal" instead of a "voluntary departure." It seems very

likely that this was an oversight; That the ICE officer who effectively revoked Plaintiff's extension simply did not realize she had an extension until September 12, 2025. Reasonableness, due process, and decency, demand that Defendants give Plaintiff until September 12, 2025 to depart, and that her departure be recorded as a "voluntary departure." Therefore, Defendant is likely to succeed on the merits of her claim.

### (2) Whether the movant will suffer irreparable harm if the injunction is not issued.

Here, if Defendants are not enjoined from removing Plaintiff until the Court can decide this matter, Defendants will either force her to depart, herself and record it as a "removal" or they will arrest her, hold her, and remove her themselves. There is no question that, if that is allowed to occur, Plaintiff will suffer the irreparable harm of the statutory 10-year ban on reentry into the United States.

> I]f an alien is permitted to depart voluntarily under this section and voluntarily fails to depart the United States within the time period specified, the alien-- … shall be ineligible, for a period of 10 years, to receive any further relief under this section and sections 1229b, 1255, 1258, and 1259 of this title.
>
> 8 USC § 1229c.
>
> Any alien… who… has been ordered removed under section 1229a of this title or any other provision of law… and who seeks admission within 10 years of the date of such alien's departure or removal… is inadmissible.
>
> 8 USC § 1182.

As the Supreme Court has recognized, 'removal' "[n]ot only… affect[s] the time one may have to reopen immigration proceedings. As we have seen, it also affects an individual's exposure to detention, removal, and fines, and carries with it serious ramifications for his ability to seek lawful status for years into the future. §§ 1229c(d)(1), 1182(a)(9); 8 C.F.R. § 1240.26(a)." *Monsalvo Velazquez v. Bondi*, No. 23-929, 2025 WL 1160894 (U.S. Apr. 22, 2025).

Therefore, because Plaintiff will be excluded from entering the United States, her home for the last 23 years, for a decade, whether or not she is able to visit or live with her family in Mexico, she will suffer an irreparable harm if no injunctive relief issues.

**(3) Whether the issuance of the injunction would cause substantial harm to others.**

There is simply no risk that an injunction enjoining Defendants from removing Plaintiff before the resolution of this petition would cause any harm to anyone. It will not cause an additional expense for the government as Plaintiff will still depart to Mexico, at her own expense, at the resolution of this matter, which may be quite quick. The injunction will not expose the community at large to any risk from Plaintiff, as she has no criminal record, has steady employment and a work authorization from Defendant through November of 2025 [**Exhibit E, Work Authorizations**], and has appeared at every immigration court date and appointment

she has been given. There simply is no risk of injury to anyone, so long as the injunction is ordered.

### (4) Whether the public interest would be served by issuing the injunction.

It is axiomatic in the law that public policy is set by the laws enacted by Congress. Here, Congress enacted the Immigration and Nationality Act, which authorized the Immigration Judge and the Board of Immigration Appeals to grant Plaintiff voluntary departure within 60 days plus any extension granted to her by DHS. Therefore, public policy favors allowing Plaintiff, who has been compliant with all of Defendants' demands of her, to voluntarily depart.

In fact, *Giraldo v. Holder*, the Sixth Circuit held that aliens who miss their voluntary departure deadline but are requesting a stay (as Plaintiff requested and received) should not be subject to the harsh penalties of "removal." "[T]he penalties for failure to depart voluntarily under section 240B(d) of the Act shall not apply to an alien who files a petition for review, and who remains in the United States while the petition for review is pending." *Giraldo v. Holder*, 654 F.3d 609, 617 (6th Cir. 2011). Under Sixth Circuit precedent, this even includes aliens who missed their voluntary departure deadline and their deadline to file for a stay. "[H]eld that alien would still be allowed voluntary departure even though his motion to stay voluntary departure was untimely filed." *Macotaj v. Gonzales*, 424 F.3d 464 (6th Cir. 2005).

Here, Plaintiff has been complaint with Defendants' orders, and public policy holds that the United States not so cruelly and excessively punish Plaintiff with, essentially, a ten-year sentence of exclusion from the United States.

II. **The Court should grant Plaintiff mandamus, and order Defendants to record her departure as a "voluntary departure."**

A district court has authority under the Mandamus Act to "compel an officer or employee of the U.S. or any agency thereof to perform a duty owed to the plaintiff." 28 USC § 1361. Admittedly, mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (internal quotation marks and citation omitted). However, immigration cases are often one of those causes. See *Omar v. Blinken*, 756 F. Supp. 3d 520, 526 (S.D. Ohio 2024) and cases like it. ["Plaintiffs contend that Defendants, in their management of the government agencies responsible for issuing visas, have unreasonably delayed in adjudicating the visa application for Seif to enter the United States."] Because the writ of mandamus "is one of the most potent weapons in the judicial arsenal, three conditions must be satisfied before it may issue." *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (internal quotation marks and citations omitted).

First, a petitioner must "have no other adequate means to attain the relief [it] desires—a condition designed to ensure that the writ will not be used as a substitute

7 | P a g e

for the regular appeals process." *Id*. at 380−81, 124 S.Ct. 2576 (citation omitted). That is exactly the case here, where Plaintiff is without recourse in the Board of Immigration Appeals because it was more than 90 days from the date of her March 27, 2023 final order from the BIA [**Exhibit B**] when Defendants violated it. "The time limits for filing… a motion to reopen [is] 'crystal clear…' A motion to… reopen must be filed 'within 90 days of the date of entry of a final administrative order of removal,' 8 U.S.C. § 1229a(c)(7)(C)(i). *** This time limitation is enforced strictly…" *Gor v. Holder*, 607 F.3d 180, 184-5 (6th Cir. 2010). So, Plaintiff is without administrative relief. And Plaintiff cannot seek judicial review in the Sixth Circuit, because the statute giving the Sixth Circuit jurisdiction has an even shorter time limit than that of the BIA. "…8 U.S.C. § 1252(b)(1), states that '[t]he petition for review must be filed not later than 30 days after the date of the final order of removal.' That statutory time limit is 'both mandatory and jurisdictional.' " *Prekaj v. I.N.S.*, 384 F.3d 265, 267 (6th Cir. 2004). Therefore, Plaintiff meets the first prong of the mandamus test.

Second, a petitioner must show a "clear and indisputable" right to the relief sought. *Id*. at 381, 124 S.Ct. 2576 (citation omitted). Here, the BIA conferred upon Plaintiff the right of voluntary departure in language that could not be more clear. The BIA's order states: "within 60 days from the date of this order ***or any extension beyond that time as may be granted by DHS***." **Exhibit B, March 27, 2023 BIA Order of Voluntary Departure**. Here, the DHS granted Plaintiff an extension until

8 | P a g e

September 12, 2025 and so Plaintiff has a right to voluntary departure until that time. **Exhibit D, July 26, 2023 Order of Supervision, page 2**. Therefore, Plaintiff meets the second prong of the mandamus test.

Finally, a petitioner must show that issuing the writ is otherwise "appropriate under the circumstances." *Id*.; see also *In re King's Daughters Health Sys., Inc*., 31 F.4th 520, 525–26 (6th Cir. 2022).and *In re Pros. Direct Ins. Co*., 578 F.3d 432, 437 (6th Cir. 2009). Here, the facts are uncomplicated and the requested mandamus is benign. The request is to let Plaintiff voluntarily depart the United States so that she does not suffer harsh and undue consequences for the next decade. She has been completely compliant and, had Defendants informed her beforehand of their intention to charge her with failing to voluntarily depart, she would have booked a flight immediately and departed. The mandamus relief requested is more than appropriate under the circumstances.

Therefore, Plaintiff meets all prongs of the mandamus test and the mandamus should issue.

### III. The Court should issue Plaintiff habeas relief, and order Defendant to release Plaintiff from "custody" for the duration of these proceedings, *i.e*., continue her supervised release.

Whether or not Plaintiff is being physically detained at this time does not bar her from seeking habeas relief. Plaintiff is currently considered 'in custody' under the law and so entitled to relief. Under 28 U.S.C.A. § 2241, the writ of habeas corpus extends to individuals who are "in custody" under the authority of the United States,

including those challenging the legality of their detention or removal orders. Courts have interpreted "in custody" broadly in the immigration context to include situations where an alien is subject to a final order of removal, even if not physically detained by immigration authorities. For example, in *Lemeshko v. Wrona*, 325 F.Supp.2d 778 (2004), the court held that an alien subject to a final removal order is "in custody" for habeas purposes, even if not physically detained, as long as the alien is challenging the grounds of the removal order. Similarly, in *Agarwal v. Lynch*, 610 F.Supp.3d 990 (2022), the court found that a noncitizen was "in custody" at the time of filing a habeas petition challenging an expedited removal order, as the removal order imposed adverse collateral consequences, such as inadmissibility to the United States for five years.

Plaintiff is entitled to *habeas* relief from Defendants' custody of her because said custody contradicts the final order of the BIA, exceeds its lawful authority under the INA, and therefore violates the Fifth Amendment due process clause. Wherefore, the Court should grant Plaintiff a writ of *habeas corpus*.

## CONCLUSION AND RELIEF REQUESTED

In conclusion, Plaintiff has called the United States home for the last 23 years. During that time, she raised her united citizen son and has been caring for her husband while he battles cancer. She has no criminal history, has gainful employment, and has been an active and upstanding member of her community. It was ordered by the BIA that Plaintiff had 60 days plus any extensions given by DHS.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P.: (313) 983-4600 | F: (313) 983-4665

Plaintiff was clearly given such extension when she was ordered to return to ICE on September 12, 2025. As stated above, the factors courts must consider when issuing injunctive relief weigh in favor of Plaintiff. It is important to note that Plaintiff is not requesting extraordinary relief granting her permission to stay in the country indefinitely, only for her to rightfully be able to depart voluntarily as she was entitled to do under the BIA's order.

Plaintiff is requesting that this court clear up any oversight regarding the deportation order she was issued.

WHEREFORE, Plaintiff respectfully requests that this Court:

a) Declare Defendants "removal" of Plaintiff unlawful as Plaintiff was and is still within the voluntary departure period granted by the BIA and extended by Defendants;

b) Enjoin Defendants from removing Plaintiff while this action is pending;

c) Issue a writ of *mandamus* to Defendants requiring them to record Plaintiff's actual voluntary departure as, legally, a "voluntary departure;"

d) Issue a writ of *habeas corpus* preventing Defendants from detaining Plaintiff;

e) Award attorney's fees and costs, if applicable; and

f) Grant all other relief that this Court deems just and equitable.

          Respectfully submitted,

          AYAD LAW, PLLC

          */s/Nabih H. Ayad* (P59518)
          645 Griswold St., Ste. 2202
          Detroit, MI 48226
          P: 313.983.4600 | F: 313.983.4665
Dated: July 3, 2025        filing@ayadlawpllc.com

**12** | P a g e

## CERTIFICATE OF SERVICE

I hereby certify that on this date I filed the foregoing paper and any attachments with the Clerk of Courts via the CM/ECF Electronic filing System giving notice to all parties.

Respectfully submitted,

AYAD LAW, PLLC

Dated: July 3, 2025

/s/*Nabih H. Ayad* (P59518)
645 Griswold St., Ste. 2202
Detroit, MI 48226
P: 313.983.4600 | F: 313.983.4665
filing@ayadlawpllc.com

**13** | P a g e

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665