United States District Court
Eastern District of Michigan

Rosa Maria Pena Garcia,

     Plaintiff,                       Civil No. 25-12023

v.                                  Honorable Susan K. DeClercq
                                  Magistrate Judge Elizabeth A. Stafford

U.S. Department of Homeland
Security, Kristi Noem, in her official
capacity as Secretary of the U.S.
Department of Homeland Security;
U.S. Customs and Immigration
Enforcement; Todd Lyons, in his
official capacity as Acting Director of
U.S. Customs and Immigration
Enforcement; and Robert Lynch, in his
official capacity as Field Office
Director of Detroit, U.S. Immigration
and Customs Enforcement,

     Defendants.

---

## Defendants' Response to Plaintiff's Request for an Emergency Motion for Stay of Deportation

---

On July 14, 2025, plaintiff filed an emergency motion to stay her deportation. (Mot., ECF No. 3). On the same day, the Court set a status conference for 10am on July 15, 2025. (Order, ECF No. 4). For the reasons described in the attached brief, defendants respectfully request that the Court deny plaintiff's request for an order staying her removal because the Court lacks jurisdiction to enter such an order and,

even if the Court had jurisdiction, plaintiff has not demonstrated that such an order

would be appropriate in this case.

Respectfully submitted,

Jerome F. Gorgon Jr.
United States Attorney

*/s/ Zak Toomey*
Zak Toomey (MO61618)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9617
Dated: July 15, 2025                           zak.toomey@usdoj.gov

United States District Court
Eastern District of Michigan

Rosa Maria Pena Garcia,

     Plaintiff,                   Civil No. 25-12023

v.                            Honorable Susan K. DeClercq
                              Magistrate Judge Elizabeth A. Stafford

U.S. Department of Homeland
Security, et al.

     Defendants.

---

## Defendants' Brief in Response to Plaintiff's Emergency Motion for Stay of Deportation

---

## Issues Presented

I.    Should the Court deny plaintiff's motion when she is unlikely to succeed on the merits, she has not demonstrated she is likely to suffer an irreparable harm, and the proposed injunction is not in the public interest?

II.    If the Court issues a temporary restraining order, should the Court require plaintiffs to provide adequate security?

# Table of Contents

Introduction ................................................................................................1

Background ..................................................................................................1

Standard of Review ......................................................................................5

Argument......................................................................................................5

   I.    Plaintiff is Not Entitled to a TRO ......................................................5

     A.    Likelihood of Success on the Merits ...........................................6

        1.    Jurisdiction ...........................................................................6

        2.    Due Process ...........................................................................8

        3.    APA Claim ..........................................................................12

        3.    Habeas Claim ......................................................................14

        4.    Mandamus Claim ................................................................15

     B.    Irreparable Injury ......................................................................15

     C.    Balance of Equities and Public Interest....................................17

   III.    If the Court Enters a TRO the Court Should Require that Plaintiffs Give Appropriate Security ...........................................................................18

Conclusion ................................................................................................19

Certificate of Service ................................................................................21

# Introduction

Plaintiff is a citizen of Mexico residing in the United States without lawful immigration status. She is not in ICE detention, but she is subject to a final order of removal and, pursuant to that order, she has scheduled her own travel to Mexico on a commercial airline and is scheduled to depart in the next few days. Plaintiff has filed an emergency motion to stay her removal because she argues that her removal should be characterized as a voluntary departure, instead of a removal. The Court should deny plaintiff's motion because only the Sixth Circuit has jurisdiction to hear plaintiff's challenge to her removal, a federal statute bars the court from staying her removal based on her claim of an entitlement to a voluntary departure, and, even if this Court had jurisdiction, the motion lacks merit because the relief plaintiff requests does not require a stay of her removal and the relevant facts and legal authority do not support plaintiff's request.

# Background

Plaintiff Rosa Maria Pena Garcia is a citizen of Mexico. (Compl., ECF No. 1, PageID.5). She entered the United States unlawfully 23 years ago and currently resides in Michigan. (*Id.*).

Several years ago ICE instituted removal proceedings against Pena Garcia and she was ordered removed. (*See* BIA Order, ECF No. 1-4, PageID.37–40). In response, she applied for a cancellation of removal and an immigration judge held

1

an evidentiary hearing on her application. (*See id.*). On June 3, 2019, the immigration judge denied Pena Garcia's application and granted her voluntary departure with an alternate order of removal, which would automatically take effect if she violated any of the terms of her voluntary departure. (*See id.* at PageID.37); 8 C.F.R. § 1240.26(d).

Pena Garcia appealed the immigration judge's denial of her application. On March 27, 2023, the Board of Immigration Appeals dismissed her appeal and reinstated the immigration judge's order granting voluntary departure with an alternate order of removal. (*See* BIA Order, ECF No. 1-4, PageID.37–40). Pena Garcia's period of voluntary departure expired 60 days later, on May 26, 2023. (*See id.*; Notice of Breach of Bond, ECF No. 1-9, PageID.53); 8 U.S.C. § 1229c(b). Pena Garcia did not voluntarily depart during that time or seek an extension of the voluntary departure period. (See Notice of Breach of Bond, ECF No. 1-9, PageID.53). Therefore, the immigration judge's grant of voluntary departure was no longer valid and the immigration judge's order automatically became a final order of removal. (*See* BIA Order, ECF No. 1-4, PageID.39); 8 C.F.R. § 1240.26(d).

On July 26, 2023, Pena Garcia applied to ICE for a discretionary stay of her final order of removal. (*See* Stay Order, ECF No. 1-5, PageID.41). On the same day, ICE issued an order of supervision intended to ensure that ICE could monitor Pena

Garcia to effectuate her removal. (*See* Order of Supervision, ECF No. 1-6, PageID.42–44).

On August 21, 2023, ICE granted Pena Garcia a stay of removal for one year. (*See id.*). The following day, Pena Garcia reported to ICE pursuant to her order of supervision and scheduled an appointment to check in with ICE one year later, on September 12, 2024. (*Id.* at PageID.43). ICE granted Pena Garcia temporary employment authorization in connection with her order of supervision in accordance with 8 C.F.R. § 241.5(c). (*See* Empl. Auth., ECF No. 1-7, PageID.45–50).

ICE's stay of Pena Garcia's removal expired on August 21, 2024. (See Stay Order, ECF No. 1-5, PageID.41). Pena Garcia did not apply to extend the stay of removal before it expired. (*See* Notice of Breach of Bond, ECF No. 1-9, PageID.53). Therefore, ICE could lawfully remove Pena Garcia at any time after August 21, 2024.

On September 12, 2024, Pena Garcia reported to ICE for her previously scheduled check in.  (*See* Order of Supervision, ECF No. 1-6, PageID.43). At that visit, ICE had not yet made plans to remove Pena Garcia, so the ICE officer scheduled another check in appointment for the following year. (*See id.*).

On May 20, 2025, ICE issued a new order of supervision for Pena Garcia. (*See* Order of Supervision, ECF No. 1-10, PageID.54–55). In that order, ICE notified Pena Garcia that she would be removed in the near future and gave her the option to

schedule her own departure. (*See id.* at PageID.55). To that end, ICE ordered Pena Garcia to report to an ICE office with a copy of her self-prepared itinerary on May 27, 2025. (*Id.*). On May 27, 2025, Pena Garcia reported to ICE with a copy of her itinerary, in which she had scheduled a flight for herself on a commercial airline to Mexico scheduled to depart in July 2025.[1] (*Id.*).

On July 3, 2025, Pena Garcia submitted her second application for a stay of removal. (App. for Stay, ECF No. 1-12, PageID.62). She filed this suit on the same day seeking an order staying her removal and characterizing any future removal as a voluntary departure, instead of a removal. (*See* Compl., ECF No. 1, PageID.13). In her complaint, Pena Garcia asserts claims under the Due Process clause, the Administrative Procedure Act, the Habeas Act, and the Mandamus Act. (*Id.* at PageID.9–13).

ICE denied plaintiff's application for an administrative stay of removal on July 6, 2025. (Exhibit 1 – Denial of Stay of Removal).

Plaintiff served the U.S. Attorney's Office with a copy of the summons and complaint on July 10, 2025. Plaintiff filed an emergency motion to stay her removal on July 14, 2025. (*See* Pl. Mot., ECF No. 3).

---

[1] There is a discrepancy in the records regarding the date of Pena Garcia's flight. The handwritten Order of Supervision states that the date is July 16, 2025, but ICE's departure database lists the date as July 18, 2025. (*Compare* Order of Supervision, ECF No. 1-10, PageID.55 *with* Itinerary, ECF No. 1-11, PageID.59).

## Standard of Review

Under Rule 65, a district court may issue a temporary restraining order or preliminary injunction. Fed. R. Civ. P. 65. However, an "injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002).

## Argument

The Court should deny plaintiff's emergency motion because the Court lacks jurisdiction to enter an order staying Pena Garcia's removal and because plaintiff's motion is factually and legally incorrect. In addition, plaintiff cannot meet her burden of demonstrating an irreparable injury or that the public interest favors a stay of her removal at this time. Finally, if the Court orders preliminary injunctive relief, the Court should require adequate security.

### I.     Plaintiff is Not Entitled to a TRO

Under Rule 65, if notice is provided to the adverse party, the standard for issuing a preliminary injunction and a temporary restraining order are the same. *See Overstreet v. Lexington-Fayette Urb. Cnty. Gov't,* 305 F.3d 566, 572 (6th Cir. 2002); *News Herald, a Div. of Gannett Satellite Info. Network, Inc. v. Ruyle,* 949 F. Supp. 519, 521 (N.D. Ohio 1996).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997). Plaintiff has not met the high burden of demonstrating she is entitled to preliminary injunctive relief.

### A.    Likelihood of Success on the Merits

Plaintiff seeks relief under the due process clause, the Administrative Procedure Act, the Habeas Act, and the Mandamus Act. As described below, she is unlikely to succeed under any of these theories.

### 1.    Jurisdiction

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citing Marbury v. Madison, 2 L.Ed. 60 (1803)). In

With the REAL ID Act of 2005 (the Act), H.R. 1268, 109th Cong. (2005) (enacted), Pub. L. No. 109-13, Div. B., 119 Stat. 231, 8 U.S.C. § 1252, et seq., Congress significantly narrowed the scope of judicial review for removal orders in immigration cases. In section 106(a) of the Act, Congress amended section 242 of

the Immigration and Nationality Act (INA), (codified at 8 U.S.C. § 1252), to clarify that district courts do not have jurisdiction, habeas or otherwise, to review any removal order for any alien. 8 U.S.C. § 1252(a)(2)(A)(i) ("Notwithstanding any other provision of law (statutory or nonstatutory), including [28 U.S.C. § 2241], or any other habeas corpus provision . . . no court shall have jurisdiction to review . . . an order of removal . . . .").

Instead, under the Real ID Act, Congress transferred the burden of considering challenges to an alien's removal from the district courts to the courts of appeals. See 8 U.S.C. §§ 1252(a)(5) and (b)(9); *Hamama v. Adducci*, 912 F.3d 869, 874 (6th Cir. 2018) (holding that district courts do not have jurisdiction to hear direct or indirect challenges to removal) (citations omitted); *Muka v. Baker*, 559 F.3d 480, 483 (6th Cir. 2009) (same).

Further, even in the courts of appeals, Congress precluded judicial review of certain discretionary immigration decisions. *See* 8 U.S.C. § 1252(a)(2)(B); *see e.g.*, *Rahman v. Bondi*, 131 F.4th 399, 402 (6th Cir. 2025). This jurisdiction stripping provision includes decisions to deny grants of voluntary departure. *See* 8 U.S.C. § 1252(a)(2)(B) (precluding jurisdiction over denials of requests for relief under 8 U.S.C. § 1229c, the statute governing voluntary departures). And Congress explicitly prohibited courts from ordering "a stay of an alien's removal pending consideration of any claim with respect to voluntary departure." 8 U.S.C. § 1229c(f).

Here, the Court lacks jurisdiction to stay plaintiff's removal. Plaintiff seeks to stay her removal so that she can challenge the agency's decision to remove her instead of reinstating her grant of voluntary departure. (Compl., ECF No. 1, PageID.1–2). However, the Sixth Circuit has exclusive jurisdiction over any challenge to plaintiff's removal. *See* 8 U.S.C. § 1252(a)(5). And a statute explicitly bars the Court from issuing a stay of removal regarding "any claim with respect to voluntary departure." *See* 8 U.S.C. § 1229c(f). Therefore, under the plain language of these statutes plaintiff's suit in the district court lacks jurisdiction and she is, therefore, unlikely to succeed on the merits.

###### 2.   Due Process

To succeed on a due process claim, a plaintiff must show that they "have a property interest that entitles them to due process protection" and, if so, the "court must then determine 'what process is due.'" *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000).

Here, plaintiff does not have a protected interest in a voluntary departure. It is well settled that noncitizens do not have constitutionally protected interests in discretionary immigration benefits, such as voluntary departures. *See Chieh v. Holder*, 411 F. App'x 800, 806 (6th Cir. 2011) ("The discretionary denial of voluntary departure is not a cognizable due-process violation."); *Shtyllaku v. Gonzales*, 252 F. App'x 16, 20 (6th Cir. 2007) ("The privilege of voluntary departure

is a matter of administrative discretion; therefore, it is not a property or liberty interest."). Therefore, plaintiff's due process claim fails as a matter of law.

Even if plaintiff had a protected property interest in a voluntary departure or the characterization of her removal as a voluntary departure, the process afforded her would satisfy the Fifth Amendment. The process due under the Fifth Amendment is determined by weighing the interest involved with the burden of providing additional procedures. *See Mathews v. Eldridge*, 424 U.S. 319, 339–40 (1976); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972).

Here, the review procedures available to plaintiff satisfied due process. Plaintiff admits that she is a noncitizen with no lawful immigration status in the United States and admits that she "is not asking for this Court to allow her to remain in the United States." (Compl., ECF No. 1, PageID.1). Plaintiff challenged her removal through an administrative review and appeal process that took several years. (*See* BIA Order, ECF No. 1-4, PageID.37–40); *see also* 8 U.S.C. § 1229a. This process more than satisfied any due process interest plaintiff had in her removal or her entitlement to a voluntary departure. *Camara v. Holder*, 705 F.3d 219, 223–24 (6th Cir. 2013) (rejecting due process challenge to removal proceedings).

Similarly, an immigration judge and the BIA granted plaintiff a voluntary departure, but she violated the conditions of that grant when she did not seek an extension under 8 C.F.R. § 1240.26(f) or voluntarily depart within 60 days. (*See* Not.

9

of Bond Breach, ECF No. 1-9, PageID.53); 8 U.S.C. § 1229c(b). There is no due process violation in failing to give plaintiff discretionary relief that she knowingly forfeited.

The Court must reject plaintiff's claim that she is currently entitled to a stay of removal because this argument is based on a misrepresentation of the record. As reflected in a letter by ICE, after plaintiff violated the terms of her voluntary departure and the BIA's order automatically converted into a final order of removal, ICE granted plaintiff a discretionary one-year stay of removal in August of 2023. (Stay of Removal, ECF No. 1-5, PageID.41). That one-year stay expired in August 2024 and plaintiff did not seek another stay of removal until nearly a year later when she had already finalized plans to execute her removal. (*See* App. for Stay, ECF No. 1-12, PageID.62). That application was denied three days later. (*See* Exhibit 1 – Denial of Stay of Removal). Therefore, there is no evidence that plaintiff is currently subject to a stay of removal.

Plaintiff cannot avoid this conclusion by relying on handwritten notations in expired orders of supervision. In her brief, plaintiff excerpts an order of supervision from 2023 and argues that those notations amount to a stay of removal because they set a supervision check-in date of September 2025. (*See* Pl. Brief, ECF No. 3, PageID.83). Plaintiff misrepresents the meaning of those notations.

First, the order of supervision does not in any way indicate that it is intended to operate as a stay of removal. (*See* Order of Supervision, ECF No. 1-6, PageID.42–44). And interpreting it that way would defeat the obvious purpose of the order of supervision, which is explicitly to facilitate removal at the earliest opportunity. (*See id.*). Further, as other documents provided by plaintiff demonstrate, when ICE issues a stay of removal, it does so unequivocally. (*See* Stay of Removal, ECF No. 1-5, PageID.41). Therefore, there is nothing in the order of supervision that supports plaintiff's argument that a supervisory check-in date operates as an irrevocable stay of removal until the date passes.

Second, the order of supervision cited by plaintiff was superseded by a new order in May 2024, which notified plaintiff that ICE was preparing to remove her and gave her the option to schedule her departure on her own. (Order of Supervision, ECF No. 1-10, PageID.54–55). Plaintiff responded to that order, appeared when ordered, scheduled her own departure to Mexico, and did not appeal or challenge her removal administratively until after she filed this lawsuit. (*See id.*; Compl., ECF No. 1). Further, plaintiff offers no law or policy indicating that it is even remotely improper for the agency to issue a new order of supervision when removal becomes foreseeable. (*See* Pl. Mot., ECF No. 3). Instead, plaintiff asserts that it was somehow a mistake, even as she offers no evidence of any kind that she is currently entitled to

11

a stay of removal. (*Id.* at PageID.84). Accordingly, these misguided arguments do not support plaintiff's due process claim.

### 3.   APA Claim

Plaintiff is unlikely to succeed on her claim under the Administrative Procedure Act (APA) because another statute precludes review and because the agency's action is not arbitrary or capricious.

### a.   The REAL ID Act Bars APA Review

"The doctrine of sovereign immunity removes subject matter jurisdiction in lawsuits against the United States unless the government has consented to suit." *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). "Although the APA provides a broad waiver of sovereign immunity, codified at 5 U.S.C. § 702, the waiver is limited by . . . § 701(a)(1) [which] provides that Chapter 7 of the APA, including § 702's waiver of sovereign immunity, does not apply to cases in which 'statutes preclude judicial review.'" *Id.*

Here, the REAL ID Act bars plaintiffs' APA claim. In this case, plaintiff seeks to stay her removal and asks the Court to grant her a voluntary departure. However, Congress stripped district courts of jurisdiction to hear challenges to removals or claims regarding voluntary departures.   *See* 8 U.S.C. § 1252(a)(5); 8 U.S.C. § 1229c(f). Therefore, the APA does not provide jurisdiction for plaintiff's suit

because another statute bars review. *See* 5 U.S.C. § 701(a)(1); *Beamon*, 125 F.3d at 967.

> b.      The Agency's Action Was Not Arbitrary and Capricious

If an action is reviewable under the APA, a court may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. "Under the arbitrary or capricious standard, the party challenging the agency's action must show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations." *Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*, 286 F.3d 382, 389 (6th Cir. 2002) (quotations omitted). "The arbitrary or capricious standard is the least demanding review of an administrative action." *Id.*

Here, the agency's action was not arbitrary or capricious. An immigration judge and the BIA granted plaintiff a voluntary departure. (*See* BIA Order, ECF No. 1-4). However, plaintiff knowingly failed to depart before the deadline, so her grant of voluntary departure automatically converted into a final order of removal. (*See id.* at PageID.39). Plaintiff never attempted to extend or reinstate her voluntary departure, however, she did seek to stay her removal, and the agency granted her a stay until August of 2024. (Stay of Removal, ECF No. 1-5, PageID.41). She did not seek to extend that stay before it expired, so nine months after the stay expired, in May 2025, the agency began preparations for her removal, but allowed her to make

13

her own arrangements to return to Mexico, which she did. (Order of Supervision, ECF No. 1-10). Plaintiff did not seek another stay of her removal until after the arrangements for her removal had been completed and the agency has denied that application. (App. for Stay, ECF No. 1-12, PageID.62; Exhibit 1 – Denial of Stay of Removal). The agency's methodical execution of plaintiff's lawful removal in this case was not arbitrary or capricious.

      3.      Habeas Claim

A district court may grant a writ of habeas corpus if an individual is in the government's custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. An individual is in the government's custody when they are physically confined by the government or the government severely restricts their freedom. *See Corridore v. Washington*, 71 F.4th 491, 495–96 (6th Cir. 2023).

Here, plaintiff is not entitled to habeas relief because she is not in the government's custody. Plaintiff is not detained and ICE has allowed plaintiff to choose how, when, and to where she will go when she leaves the United States. Therefore, ICE has not infringed on plaintiff's freedom in any meaningful way and she is not "in custody" pursuant to the § 2241.

4.      Mandamus Claim

The Mandamus Act confers jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Jurisdiction "is inextricably bound with the merits of whether a writ of mandamus should issue." *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987). To be entitled to a writ of mandamus a plaintiff must establish that "(1) he has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available." *See Carson v. U.S. Off. of Special Couns.*, 633 F.3d 487, 491 (6th Cir. 2011).

Here, plaintiff is not entitled to a writ of mandamus. She has no right to a voluntary departure and ICE does not have a clear, nondiscretionary duty to grant her a voluntary departure because the statute explicitly grants the agency discretion to grant or deny requests for voluntary departures. *See* 8 U.S.C. § 1229c(a). In addition, the administrative process provided her another adequate remedy. *See* 8 C.F.R. § 1240.26. Therefore, plaintiff's claim under the Mandamus Act lacks jurisdiction.

B.      *Irreparable Injury*

A showing of imminent irreparable injury "is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as

15

opposed to at the end of the lawsuit." *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (emphasis in original). Thus, while the Court must weigh the other preliminary injunction factors, "even the strongest showing on the other three factors cannot eliminate the irreparable harm requirement." *Id.* (quotation omitted). The Supreme Court's "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original).

Here, plaintiff has not demonstrated a likely irreparable injury. Plaintiff argues that she will suffer an irreparable injury if she is removed. (Pl. Mot., ECF No. 3, PageID.84–85). However, removal alone is not sufficient to establish irreparable injury. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("It is accordingly plain that the burden of removal alone cannot constitute the requisite irreparable injury.").

Similarly, she argues that she will suffer a likely irreparable injury if her exit from the United States is characterized as a removal because she will be subject to a 10-year bar on re-entry under 8 U.S.C. § 1182(a)(9). (Pl. Mot., ECF No. 3, PageID.84–85). However, that harm is not imminent. She has not yet been removed, she has not yet applied for re-entry, and she has not sought a waiver of her 10-year period of inadmissibility by submitting form I-212 to USCIS. (*See* Waiver of Inadmissibility                                                                    Instructions,

16

https://www.uscis.gov/sites/default/files/document/forms/i-212instr.pdf   at 6 (last visited 7/14/2025). Therefore, this allegation is not sufficiently imminent to warrant the extraordinary relief of a temporary restraining order.

Moreover, the relief plaintiff requests does not require a stay of removal. Plaintiff admits she has no lawful immigration status and that she is not challenging her ultimate removal. (*See* Compl., ECF No. 1, PageID.1). Instead, her ultimate goal is the administrative recharacterization of her removal to a voluntary departure so she can avoid a potentially lengthy bar on reentry. (*See id.* at PageID.2). However, plaintiff offers no explanation why her removal must be stayed to resolve this recordkeeping issue.

### C.    Balance of Equities and Public Interest

The third and fourth preliminary injunction factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. The Supreme Court has acknowledged that the public has a valid interest in the efficient functioning of the immigration system and held that courts cannot presume that plaintiffs establish the third and fourth preliminary injunction factors simply by alleging that they are being wrongfully denied immigration rights. *See id.* at 435–36.

Here, plaintiff has not met her burden of establishing that the balance of equities or the public interest weigh in her favor. Plaintiff's only argument on this point is that she believes she is entitled to a stay of removal. (Pl. Mot., ECF No. 3,

PageID.85–87). However, as noted above, plaintiff has offered no evidence that she is currently entitled to a stay of removal and, even she were, this allegation alone is not sufficient to demonstrate that the balance of equities or the public interest weighs in favor of a temporary restraining order. *See Nken*, 556 U.S. at 435–36.

In addition, plaintiff's authority is inapposite. Plaintiff argues that the Sixth Circuit held in *Giraldo v. Holder*, 654 F.3d 609 (6th 2011), that a noncitizen cannot be subject to removal if they "miss their voluntary departure deadline but are requesting a stay." (Pl. Brief, ECF No. 3, PageID.86). However, that is not a reliable characterization of the holding of *Giraldo*, which only dealt with whether a denial of a request for withholding of removal by the BIA granted jurisdiction to the court of appeals, even when the BIA had remanded for consideration of a grant of voluntary departure. *See id.* at 617. The Court in *Giraldo* did not conclude that individuals who violated a voluntary departure could not be removed if they belatedly requested a stay of removal. *See id.*

## III.   If the Court Enters a TRO the Court Should Require that Plaintiffs Give Appropriate Security

A "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "While this language appears to be mandatory, the rule in our circuit has long been that the district court possesses

18

discretion over whether to require the posting of security." *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013) (quotation omitted). "The amount of security required and whether a bond is needed is up to the discretion of the district court." *Golden v. Kelsey-Hayes Co.*, 845 F. Supp. 410, 416 (E.D. Mich. 1994), aff'd, 73 F.3d 648 (6th Cir. 1996)

On March 11, 2025, the President issued a memo requiring federal agencies to seek security when confronted with suits seeking emergency preliminary injunctive relief.[2] Pursuant to that memo, if the Court grants preliminary injunctive relief in this case, defendants request that the Court require plaintiff to provide adequate security.

## Conclusion

Defendants respectfully request that the Court deny plaintiff's motion for a temporary restraining order staying her removal.

Respectfully submitted,

Jerome F. Gorgon Jr.
United States Attorney

*/s/ Zak Toomey*
Zak Toomey (MO61618)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001

---

[2] *See* White House Memo, https://www.whitehouse.gov/presidential-actions/2025/03/ensuring-the-enforcement-of-federal-rule-of-civil-procedure-65c/ (last visited 4/13/2025).

19

Detroit, Michigan 48226
(313) 226-9617

Dated: July 15, 2025                    zak.toomey@usdoj.gov

## Certificate of Service

I hereby certify that on July 15, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record.

*/s/ Zak Toomey*
**Zak Toomey**
Assistant U.S. Attorney

21