UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSA MARIA PENA GARCIA,

        Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.,

        Defendants.

_____/

Case No. 2:25-cv-12023

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER DENYING PLAINTIFF'S EMERGENCY
MOTION FOR PRELIMINARY INJUNCTION OR STAY OF REMOVAL
(ECF No. 3)**

Plaintiff Rosa Maria Pena Garcia, a Mexican citizen, has lived in the United States for the past 23 years without incident. But because she entered the country without legal status, she is now facing removal and a ten-year bar from return, meaning she would be separated from her U.S. citizen son and her seriously ill husband. Make no mistake, this Court sympathizes with Pena Garcia's situation. These are difficult facts, especially given that Pena Garcia is only months away from potentially having a path to legal status through her citizen son, and because her husband relies on her care. Unfortunately, however, this Court is powerless to intervene, and so the motion will be denied.

# I. BACKGROUND

In 2019, Pena Garcia applied in Immigration Court for cancellation of removal and adjustment of status, which was denied. *See* ECF No. 1-4 at PageID.37. She appealed that decision to the Board of Immigration Appeals (BIA), and on March 27, 2023, the BIA affirmed the denial but granted her voluntary departure. *Id.* at PageID.37–40. Voluntary departure would have allowed Pena Garcia to leave on her own without the negative consequences of a removal on her record. *Id.* As to the voluntary departure order, the BIA wrote, "[Pena Garcia] is permitted to voluntarily depart the United States, without expense to the Government, within 60 days from the date of this order or any extension beyond that time as may be granted by DHS." *Id.* at PageID.39. The order then notes that "[i]n the event [Pena Garcia] fails to voluntarily depart the United States, [she] shall be removed as provided in the Immigration Judge's order." *Id.* By its own terms, that order was set to expire on May 26, 2023. *See* ECF No. 1-4.

More than 60 days later, in July 2023, Pena Garcia filed an application for a stay of deportation or removal. ECF No. 1-5 at PageID.41. On August 21, 2023, U.S. Immigration and Customs Enforcement (ICE) granted a stay of removal "for one year." *Id.* In the meantime, Pena Garcia was subject to an order of supervision. *Id.*; *see also* ECF No. 1-6. That order of supervision noted that (1) Pena Garcia was subject to an order of removal as of March 27, 2023; and (2) she was required to

report to her local ICE office on August 22, 2023, one day after the grant of her stay. ECF No. 1-6 at PageID.42. A continuation page to that order of supervision showed that Pena Garcia did report on August 22, 2023, and that her next report date would be September 12, 2024. *Id.* at PageID.43. Then, after Pena Garcia reported in September 2024, her next report date was scheduled for September 12, 2025. *Id.* In the meantime, she had also received employment authorization that would last until November 2025. ECF No. 1-7 at PageID.45.

On May 13, 2025, ICE indicated that it was proceeding with removing Pena Garcia through a series of notices. First, it issued Pena Garcia a notice that it was cancelling her $5,000 immigration bond, which it had held since April 2018, prior to her first request for cancellation of removal. ECF No. 1-8 at PageID.51. Second, ICE also sent her a notice of intention to fine her under the Immigration and Nationality Act in the amount of $3,000 for her failure to voluntarily depart under the March 2023 order. *Id.* at PageID.52. The next day, ICE sent a notice to Pena Garcia that she had breached her bond conditions by not voluntarily departing the country by May 26, 2023, so she owed an additional $500. *Id.* at PageID.53.

Approximately one week later, ICE issued a new order of supervision, requiring Pena Garcia to report in person on May 27, 2025. ECF No. 1-10 at PageID.54. According to the continuation page, Pena Garcia was directed to attend the May 27 appointment prepared to provide ICE with a "travel plan" for her

- 3 -

departure to Mexico. *Id.* at PageID.55. She therefore booked a flight from Detroit to Mexico that is scheduled for July 18, 2025, ECF No. 1-11, and brought her flight itinerary to the appointment, ECF No. 1-10 at PageID.55. ICE set her next report date for July 16, 2025. *Id.*

On July 3, 2025, Pena Garcia filed a Complaint for Declaratory and Injunctive Relief and Petition for Habeas Corpus and Mandamus in this Court. ECF No. 1. As an exhibit, she attached an Application for a Stay of Deportation or Removal that she had filed with ICE on the same day. ECF No. 1-12. Eleven days later, noting her impending removal, Pena Garcia filed an Emergency Motion for Preliminary Injunction, or in the alternative, Motion to Stay Plaintiff's Removal. ECF No. 3. The Government responded to the motion on July 15, 2025. ECF No. 5. To its response the Government also attached a letter from ICE dated July 6, 2025, which denied Pena Garcia's most recent request for a stay of removal. ECF No. 5-1 at PageID.153. This Court held a status conference on Pena Garcia's emergency motion on July 15, 2025. *See* ECF No. 4.

## II. STANDARD OF REVIEW

Preliminary injunctions have "been characterized as one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (internal quotation marks omitted). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her

- 4 -

burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Importantly, a "court may issue a preliminary injunction only on notice to the adverse party." FED. R. CIV. P. 65(a)(1).

"In determining whether to grant a motion for preliminary injunction, the district court must consider and balance the following four factors: (1) the moving party's likelihood of success on the merits; (2) the moving party's likelihood of suffering irreparable injury absent the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) the degree to which the injunction would serve the public interest." *Towerco 2013, LLC v. Berlin Twp. Bd. of Trustees*, No. 23-3768, 2024 WL 3665539, at *4 (6th Cir. Aug. 6, 2024) (citing *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004)).

Although district courts must balance these four factors, the movant's failure to establish either of the first two factors—a likelihood of success on the merits or irreparable harm—is usually fatal. *See CLT Logistics v. River West Brands*, 777 F. Supp. 2d 1052, 1064 (E.D. Mich. 2011). In sum, a preliminary injunction should be granted "only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Id.*

- 5 -

### III. ANALYSIS

Here, the balance of the factors weighs in favor of denial because Pena Garcia has not demonstrated a likelihood of success on the merits or irreparable harm. The Court will address all of the factors below, in turn.

### A. Likelihood of Success on the Merits

Pena Garcia alleges that each of the following federal laws and provisions provides an independent basis for an injunction: Fifth Amendment Due Process, the Administrative Procedure Act, the Habeas Act, and the Mandamus Act. However, she is unlikely to succeed under any of these theories, mostly because this Court lacks jurisdiction to review claims relating to an order of removal.

Under Article III of the Constitution, federal courts are courts of limited jurisdiction and may only hear cases of types authorized by Congress. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). In 2005, Congress enacted the REAL ID Act of 2005, 8 U.S.C. § 1252 *et seq.*, which narrowed the scope of judicial review of removal orders in immigration cases. Specifically, 8 U.S.C. § 1252(a)(2)(A) provides that "no court shall have jurisdiction to review" any "claim arising from or relating to the implementation or operation of an order of removal." Rather, the "exclusive means of review" of an order of removal is by petition for review with "an appropriate court of appeals." 8 U.S.C. § 1252(a)(5). Accordingly,

- 6 -

this Court lacks jurisdiction to review any claim relating to the order of removal against Pena Garcia.

But even assuming that her claim relates to an entitlement to voluntary departure rather than to the order of removal, Pena Garcia has not demonstrated that she is currently under a voluntary departure order. Rather, the records provided show that Pena Garcia has had a pending order of removal in place since March 27, 2023. ECF No. 1-4. To be sure, she was granted the opportunity to voluntarily depart at that same time, but that grant was only valid for 60 days—until May 26, 2023. *Id.* When Pena Garcia did not leave the country during that time or seek an extension *of the voluntary departure*, she became subject to the original order of removal. *See id.* Rather than extending her voluntary departure, Pena Garcia applied for, and on July 26, 2023, received, *a stay of removal* for a period of one year. ECF No. 1-5 at PageID.41. That stay delayed Pena Garcia's removal, but her voluntary departure period had already passed, and nothing in the stay indicated that it served as an extension of that period. *See id.* Ultimately, after July 26, 2024, neither the voluntary departure period nor the stay remained in effect. *See* ECF Nos. 1-4; 1-5. Therefore, ICE complied with the law when it began removal proceedings against Pena Garcia in May 2025.

Pena Garcia makes much of the fact that the BIA decision granting voluntary departure included the following language:

- 7 -

> The respondent is permitted to voluntarily depart the United States, without expense to the Government, within 60 days from the date of this order or *any extension* beyond that time as may be granted by DHS.

ECF No. 1-4 at PageID.39 (emphasis added); ECF No. 1-1 at PageID.18. Under her reading, the stay of removal in July 2023 not only stayed her removal but also extended her *voluntary departure* date to July 2024. *See* ECF No. 1-1 at PageID.18. On its own, this argument could have some merit. However, Pena Garcia stretches it even further, arguing that the Department of Homeland Security, through ICE, granted *more* extensions by simply scheduling check-in dates while an order of removal was in place. *See id.* Notably, she did not point to *any* authority that the administrative task of scheduling future ICE check-ins qualified as an "extension" of a grant of voluntary departure or a stay of removal. *See generally* ECF Nos. 1; 3. And this Court is unaware of any statute or case supporting Pena Garcia's theory that the grant of voluntary departure remains in effect under the circumstances.

Absent any legal authority that would suggest Pena Garcia *actually is* entitled to voluntary departure, there is no basis, under any of the statutes or provisions she alleges were violated, for this Court to intervene in her removal. Regardless of whether this Court believes it is good policy to remove Pena Garcia, it appears that ICE has not violated the law in enforcing the original order of removal from March 2023, which still remains in effect. Pena Garcia therefore has not demonstrated likelihood of success on the merits, even if this Court had the authority to intervene.

- 8 -

## B. Irreparable Harm

Irreparable harm is an "indispensable" requirement for an emergency injunction because without it, "there's no need to grant relief *now* as opposed to at the end of the lawsuit." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019) (emphasis in original). Plaintiffs suffer irreparable harm when their injuries are not fully compensable by money damages, *Overstreet*, 305 F.3d at 578, or when "the nature of the plaintiff's loss would make the damages difficult to calculate," *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

Pena Garcia has also failed to demonstrate that allowing her removal to proceed will cause irreparable harm. The Supreme Court has held that "it is accordingly plain that the burden of removal alone cannot constitute the requisite irreparable injury." *Nken v. Holder*, 556 U.S. 418, 435 (2009). And even if Pena Garcia has shown that classifying her departure as a removal will carry significant negative consequences in her future path towards legal status, ECF No. 3 at PageID.84–85, it is unclear from the motion whether that harm will be caused by the *removal* or by the *classification*, the latter of which could, in theory, still be challenged after Pena Garcia leaves the country. *See id.* at PageID.78 ("Plaintiff is not asking for this Court to allow her to remain in the United States but is asking for the Court to stop Defendants from unlawfully labelling her departure as a 'removal' as opposed to a 'voluntary departure,' the extreme legal consequences of which are

- 9 -

described below."); *Nken*, 556 U.S. at 435 (noting that individuals who are removed may continue to pursue their claims of relief and if they prevail they can be afforded relief, including "restoration of the immigration status they had upon removal.").

Accordingly, Pena Garcia has failed to demonstrate that the relief she requests—an injunction or stay of removal—is necessary to prevent the harm of the potential mischaracterization of her departure.

## C. Balance of Hardships and Public Interest

As mentioned at the start, the Court is certainly sympathetic to the hardships that allowing Pena Garcia's removal would impose on her, her family, and her community. And it is difficult to understand how it is in the public interest for valuable members of society who contribute to the care and wellbeing of others to be removed. But given the above determinations that Pena Garcia is unlikely to succeed on the merits, and that she has not demonstrated that she would be irreparably harmed without court intervention, the balance of equities and the public interest here are inadequate to overcome the factors in favor of denial.

In short, this Court lacks the jurisdiction to give Pena Garcia the relief she seeks in this motion. And even if there were jurisdiction, she is unlikely to succeed on the merits, and she has failed to demonstrate irreparable harm. Setting aside personal thoughts about the policy decision to remove Pena Garcia, this Court's hands are tied: the motion for an injunction or stay of removal will be denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Plaintiff's Emergency Motion for Preliminary Injunction or Stay of Removal, ECF No. 3, is **DENIED**.


*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: July 16, 2025