UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSA MARIA PENA GARCIA,

Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,

Defendants.

Case No. 2:25-cv-12023

Honorable Susan K. DeClercq
United States District Judge

_______________________________________/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF No. 11) AND DISMISSING THE CASE**

Plaintiff Rosa Maria Pena Garcia is a citizen of Mexico who seeks to have her departure from the United States classified as a voluntary departure rather than a removal. Now that Pena Garcia has left the United States, Defendants—U.S. Department of Homeland Security (DHS); U.S. Immigration and Customs Enforcement (ICE); then-DHS Director Kristi Noem; ICE Director Todd Lyons, and Director of ICE's Detroit Field Office, Robert Lynch—move to dismiss Pena Garcia's complaint as moot and for lack of jurisdiction. For the reasons below, this Court will grant Defendants' motion and dismiss the case.

## I. BACKGROUND

The following factual allegations are taken from Pena Garcia's Complaint, ECF No. 1. At the motion-to-dismiss stage, these facts must be accepted as true with

all reasonable inferences drawn in Pena Garcia's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Beyond the pleadings, this Court may also consider documents that are public record or that are "referred to in the pleadings and [are] integral to the claims." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

Pena Garcia was born in Mexico and "entered the United States without inspection" in approximately 2002. ECF No. 1 at PageID.5. Since then, she has lived in the United States with her now 21-year-old son and her husband who is battling cancer. *Id.*

**A. Removal Proceedings**

When Pena Garcia was placed in removal proceedings, she applied for cancellation of removal and adjustment of status under § 240A(b)(1) of the Immigration and Nationality Act (INA). *See* ECF No. 1-4 at PageID.37. On June 3, 2019, an immigration judge denied Pena Garcia's application, finding that she did not establish that her son—a United States citizen and qualifying relative under the INA—"would suffer exceptional and extremely unusual hardship upon her removal." *Id.* The judge granted her a post-conclusion voluntary departure. *See id.* at PageID.37, n.2.

Pena Garcia appealed the decision to the Board of Immigration Appeals (BIA) and on March 27, 2023, the BIA affirmed the immigration judge's denial of

cancellation of removal, finding no clear error. *Id.* at PageID.37–39. Noting that Pena Garcia had submitted proof of paying bond, the BIA reinstated the grant of voluntary departure period, allowing her to depart voluntarily "within 60 days from the date of this order or any extension beyond that time as may be granted by the DHS." *Id.* at PageID.39; *see id.* at PageID.37, n.2. The BIA warned Pena Garcia that if she failed depart voluntarily by May 26, 2023—or by the date set through an extension—she would be removed and subject to a 10-year civil penalty of ineligibility "for any further relief under sections 240B, 240A, 245, 248, and 249 of the INA." *Id.*

Rather than voluntarily depart, Pena Garcia filed an application for a stay of deportation or removal on July 26, 2023. ECF No. 1-5 at PageID.41. About one month later, the DHS granted Pena Garcia a one-year stay of removal, making her new removal deadline August 21, 2024. *Id.* Pena Garcia alleges that the DHS granted her two more extensions, based on the fact that the DHS ordered her to appear at the ICE Detroit field office in September 2024 and September 2025. ECF No. 1-6 at PageID.43 (writing in Pena Garcia's report on August 22, 2023 "NRD [next report date]: 09-12-2024 at 9:00 am; and writing in her report on September 12, 2024 "NRD 9/12/2025 at 8 AM").

But in mid-May 2025—about four months before the September report date—the DHS notified Pena Garcia her bond was cancelled for violating her bond

conditions by failing to depart voluntarily on or before May 26, 2023. ECF No. 1-9 at PageID.52; *see also* ECF No. 1-8. The DHS subsequently ordered Pena Garcia to appear to the ICE Detroit field office and to "[b]ring [her] travel plan." ECF No. 1-10 at PageID.55. Pena Garcia appeared as ordered and presented a confirmation number for a Delta flight to Cancun, Mexico, set to depart on July 18, 2025. ECF No. 1-11 at PageID.58–59.

**B. Procedural History**

About two weeks before her scheduled flight, Pena Garcia filed a petition for habeas corpus, mandamus, and injunctive relief. ECF No. 1. Pena Garcia alleged that Defendants were "unlawfully labelling her departure as a 'removal,'" despite her voluntary departure, which has "extreme legal consequences." *Id.* at PageID.1–2. Pena Garcia argued that Defendants' actions violated her constitutional rights enshrined in the BIA and DHS orders that allowed her to voluntarily depart by September 2025. *Id.* at PageID.2, 4.

On July 14, 2025, Pena Garcia moved for emergency relief, seeking to stay her removal. ECF No. 3. This Court held a status conference on the motion before issuing an order denying her motion for lack of jurisdiction and finding that she would not likely succeed on the merits. *See* ECF Nos. 4; 6. Specifically, this Court found that under 8 U.S.C. § 1252(a)(2)(A), this Court could not review any claim relating to her order of removal. ECF No. 6 at PageID.159–60. This Court also found

that Pena Garcia's claim would also not likely succeed on the merits because she missed her voluntary-departure date of May 26, 2023, and contrary to Pena Garcia's argument, the stay and extensions were for her removal, not for her voluntary departure. *Id.* at PageID.160.

Pena Garcia immediately appealed the decision and filed a renewed emergency motion before the Sixth Circuit Court of Appeals. ECF Nos. 7; 8. The Sixth Circuit denied her motion on jurisdictional grounds. *See* ECF No. 9 (citing 8 U.S.C. § 1229(c)).

On July 18, 2025, as scheduled, Pena Garcia voluntarily departed the country on her scheduled flight. *See* ECF No. 11-1 at PageID.183 (confirming that Pena Garcia "self-removed to Mexico via a commercial airlines flight from Detroit, MI to Cancun, Mexico"). The following month, Pena Garcia withdrew her appeal. *See* ECF No. 10 (granting Pena Garcia's motion to voluntarily dismiss her appeal).

Defendants thereafter moved to dismiss the Complaint for lack of subject-matter jurisdiction given that Pena Garcia had already left the country. ECF No. 11. The motion is fully briefed, ECF Nos. 12; 16, and this Court will decide it on the papers without a hearing. *See* E.D. Mich. LR 7.1(f)(2).

## II. LEGAL STANDARD

Under Civil Rule 12(b)(1), a motion "to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack."

*Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack challenges "the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "Essentially, the four-corners rule applies to facial attacks." *Thomson v. Peterson*, 828 F. Supp. 3d 856, 865 (E.D. Mich. 2025) (citing *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012)). But for a factual attack on jurisdiction, "the district court has broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject-matter jurisdiction exists." *Adkisson v. Jacobs Eng'g Grp.*, 790 F.3d 641, 647 (6th Cir. 2015). "[F]or factual attacks, the court does not presume the truth of the jurisdictional facts in the pleadings." *Thomson*, 828 F. Supp. 3d at 866. So a court may dispose of the four-corners rule and 'weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction.'" *Id.* (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)).

## III. DISCUSSION

Pena Garcia seeks declaratory, mandamus, injunctive "and/or *habeas corpus* relief," alleging that Defendants have misclassified her departure as a removal instead of a voluntary departure. ECF No. 1 at PageID.3. The crux of her argument is her assertion that she was entitled to depart voluntarily until September 12, 2025,

because she received a stay and extensions on her removal date. ECF No. 12 at PageID.189, 193. Defendants argue that this Court lacks jurisdiction because the case is moot by virtue of Pena Garcia leaving the country and because this Court lacks the ability to grant Pena Garcia's requested relief. ECF No. 11 at PageID.179–80. As explained below, this Court finds that it lacks jurisdiction and will grant the motion to dismiss the case.

"Voluntary departure is a discretionary form of relief that allows certain" undocumented individuals "to leave the country willingly." *Dada v. Mukasey*, 554 U.S. 1, 8 (2008). "The relief of voluntary departure is governed by" the INA wherein an immigration judge or the BIA "may grant a period of voluntary departure" under § 1229c. *Mullai v. Raycraft*, 385 F.3d 635, 640 (6th Cir. 2006) (quoting 8 U.S.C. § 1229c). An individual may apply for and secure an extension of her voluntary-departure date. *See* 8 C.F.R. § 1240.26(f); *see also Moussa v. Jenifer*, 279 F. Supp. 2d 861, 862 (E.D. Mich. 2003) (recounting that the petitioner's voluntary-departure date was extended). But "[i]n no event can the total period of time, including any extension, exceed 120 days or 60 days as set forth in the section 240B of the [INA]." 8 C.F.R. § 1240.26(f); *see also* 8 U.S.C. § 1229c(a)(2)(A) ("[P]ermission to depart voluntarily under this subsection shall not be valid for a period exceeding 120 days.").

Under the INA, only a few specific DHS entities have the authority to extend a voluntary-departure date. 8 C.F.R. § 1240.26(f). Additionally, § 1229c(f) provides that "[n]o court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure under subsection (b), nor shall any court order a stay of an [undocumented person's] removal pending consideration of any claim with respect to voluntary departure." 8 U.S.C. § 1229c(f). Furthermore, the INA states that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229c." 8 U.S.C. § 1252(a)(2)(B)(i).

After a final order of removal is entered, a party may move before a federal court of appeals to stay removal, stay voluntary departure, or both; but moving to stay removal does not automatically include a request to stay voluntary departure when the motion to stay removal is filed *after* the voluntary-departure period expired. *See Mullai*, 385 F.3d at 640; *Cf. Macotaj v. Gonazales*, 424 F.3d 464, 466 (6th Cir. 2005) (construing a motion to stay removal as including a request to stay voluntary departure where the motion to stay removal was filed *before* the voluntary-departure period expired).

Here, Pena Garcia fundamentally misunderstands the nature of the stay—and alleged extensions—she received. After her voluntary departure date had already expired, Pena Garcia filed an application with the DHS to stay her *removal*. *See* ECF No. 1-5 at PageID.41. But she did not apply or move to stay her *voluntary departure*.

*See Mullai*, 395 F.3d at 640. Because a stay of removal does not automatically extend the 60-day window for voluntary departure, Defendants have not arbitrarily misclassified Pena Garcia's status. *See* 8 U.S.C. § 1229c(d) (providing that if an individual remains in the United States beyond her voluntary-departure period, the voluntary-departure order automatically becomes a removal order with applicable removal consequences); *see also* 8 C.F.R. § 1240.26(a) (same).

Moreover, even if Pena Garcia had sought an extension of time to voluntary depart, the INA explicitly precludes a voluntary-departure period from exceeding 120 days from the date it was granted, inclusive of any extensions. 8 U.S.C. § 1229c(a)(2)(A); 8 C.F.R. § 1240.26(f). Therefore, the latest date at which Pena Garcia could have received the benefits of a voluntary departure was July 25, 2023.[1] Put another way, the plain text of the INA prohibits a two-year voluntary departure extension, such as Pena Garcia claims she was given. 8 U.S.C. § 1229c(a)(2)(A); 8 C.F.R. § 1240.26(f).[2]

---

[1] On March 26, 2023, the BIA granted Pena Garcia a 60-day period to voluntarily depart, the last day of which was May 26, 2023. ECF No. 1-4 at PageID.37, 39. Under the INA, the maximum period of days, including any extension, cannot exceed 120 days, so at best, Pena Garcia could have extended her 60-day period to 120 days, making that latest possible departure date July 25, 2023. *See* 8 U.S.C. § 1229c(a)(2)(A); *see also* 8 C.F.R. § 1240.26(f).

[2] Additionally, the fact that Pena Garcia purchased a commercial airline ticket and left the country independently does not mean that she "voluntarily departed" under the INA because a voluntary departure is a technical term for leaving in a certain manner and within a designated period. *See generally* 8 U.S.C. § 1229c. The term

Although Pena Garcia frames her requested relief as an administrative correction of a misclassification error, this Court is unable to grant that relief where she was, in fact, properly classified. Accordingly, this matter is now moot. *See Cal. Palms Addiction Recovery Campus, Inc. v. United States*, 158 F.4th 726, 730 (6th Cir. 2025) ("An issue becomes moot when it becomes impossible for the court to grant any effectual relief whatsoever.") (internal quotation marks and citation omitted); *see also Demis v. Sniezek*, 558 F.3d 508, 514 (6th Cir. 2009) (holding that the matter was moot because the prisoner's habeas petition challenged regulations prohibiting transfers to a correctional center, but the prisoner had subsequently been placed in the center and then released from custody). And where a matter is moot, the court lacks jurisdiction. *See id.* at 512 (collecting cases); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (holding that Article III of the Constitution prevents decision of moot cases).

Plus, to the extent Pena Garcia is seeking to compel the DHS to retroactively grant her a new or extended voluntary-departure date, this Court lacks jurisdiction

---

does not confer its legal benefits to all circumstances where an individual leaves a country through means other than government-funded travel. *See Dada*, 554 U.S. at 11 (describing the benefits that a voluntary departure offers); *see also United States v. Ramirez-Carcamo*, 559 F.3d 384, 386 (5th Cir. 2009) (holding that an individual independently taking a flight to leave the country "in advance of scheduled proceedings was not a 'voluntary departure,' a term of immigration art inapplicable here."); *Tapia v. Gonzales*, 430 F.3d 997, 998 n.2 (9th Cir. 2005) ("Administrative voluntary departure is a term of art, denoting a form of relief from removal provided for by statute.") (internal quotation marks and citations omitted).

over voluntary-departure decisions. *See* 8 U.S.C. §§ 1229c(f), 1252(a)(2)(B)(i); *see also* 8 C.F.R. § 1240.26(f). As does the Sixth Circuit. *See Mullai*, 385 F.3d at 640 (holding that the petitioner's "lack of a pre-expiration motion to stay disqualifies" her from the federal court's jurisdiction). Indeed, "[a]ny judicial order to 'reinstate' at this time would necessarily authorize a *new* opportunity to voluntarily depart, a function assigned to the Attorney General's office . . . and denied to the courts by" the INA. *Id.* The INA expressly states that "[a]uthority to extend the time within which to depart voluntarily specified initially by an immigration judge or the [BIA] is only within the jurisdiction of the district director, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs." 8 C.F.R. § 1240.26(f).

Simply put, after May 26, 2023, Pena Garcia no longer had the option of voluntarily departing, even if she later self-removed later. This Court, like others have, sympathizes with this misunderstanding. *See, e.g.*, *Desta v. Ashcroft*, 365 F.3d 741, 749 (9th Cir. 2004) ("Based on the prior state of the law, [petitioner] (and his counsel) would have been justified in thinking that the period of voluntary departure would be automatically stayed."); *Rife v. Ashcroft*, 374 F.3d 606, 616 (8th Cir. 2004) ("[O]ur past practice gave [petitioners] reason to believe that the stay of removal included a stay of their voluntary departure period as well."). But ultimately, by staying beyond her voluntary-departure deadline of May 26, 2023, Pena Garcia's

opportunity to receive the benefits of an administrative voluntary departure perished. And by receiving a stay on her removal proceedings in August 2023, Pena Garcia obtained only the opportunity to avoid removal for a year, with no change to the fact that her voluntary-departure date had expired. Thus, this issue is moot, and this Court lacks jurisdiction to change that fact. *See Demis*, 558 F.3d at 512. Therefore, this Court will dismiss the case.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 11, is **GRANTED,** thereby **DISMISSING THE CASE**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: September 21, 2026